**SIGNED THIS: November 30, 2015**

**Mary P. Gorman**
**United States Chief Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re | ) | |
| | ) | Case No. 14-70113 |
| SHERYLE HENRY, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| | ) | |
| JAMES R. INGHRAM, Chapter 7 Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 15-07023 |
| | ) | |
| SHERYLE HENRY, | ) | |
| | ) | |
| Defendant. | ) | |

# O P I N I O N

This matter is before the Court for decision after trial of a complaint filed by James R. Inghram, Chapter 7 Trustee ("Trustee"), to revoke the discharge previously issued to the Debtor. Because the Trustee failed to meet his burden of proof at trial, judgment will be entered in favor of the Debtor and against the Trustee on the complaint.

## I. Factual and Procedural Background

Sheryle Henry ("Debtor") filed her voluntary petition for relief under Chapter 7 on January 28, 2014. At that time, she was employed as an office administrator for the Illinois Department of Public Health. On her Schedule I, the Debtor stated that her monthly gross wages were $4502 and that after deductions for taxes, insurance, union dues, and retirement, her monthly net wages were $2899.62. She also disclosed the receipt of $625 per month in rental income bringing her total monthly net income to $3524.62. On her Schedule J, she stated that she had no dependents and she itemized monthly expenses of $4247.67 resulting in a $723.05 shortfall each month. The Debtor received her discharge on May 19, 2014.

In August 2014, the Trustee filed a motion seeking turnover of $3627 from the Debtor, alleging that she had received that amount post-petition from federal and state tax refunds and that the funds were property of the estate. Neither the Debtor nor her attorney appeared at the hearing on the Trustee's motion but the Trustee reported that he had spoken with the Debtor's attorney and they were prepared to submit an agreed order granting the motion. An agreed order

("Turnover Order") was subsequently presented and entered on September 11, 2014, requiring the Debtor to turn over $2782—the amount of the refunds less the Debtor's remaining wildcard exemption—within thirty days. The Turnover Order bore the signature of the Debtor's attorney evidencing his agreement to its terms.

Although no formal request to modify the Turnover Order was ever made, the Debtor and Trustee apparently agreed shortly after its entry to change the payment terms. According to the Debtor, she was unable to pay the full amount due in a lump sum and, through her attorney, requested and obtained permission from the Trustee to make $250 per month installment payments. Thereafter, the Debtor paid $250 to the Trustee on October 1, 2014, and $500 in both November and December. Nothing further was paid until May 2015 when the Debtor sent $175 to the Trustee.

The Trustee filed his complaint to revoke the Debtor's discharge on May 26, 2015. Two weeks later, the Debtor paid $1537 to the Trustee, bringing her total payments to $2962, ninety dollars more than required by the Turnover Order.

In his complaint, the Trustee alleged that the Debtor's discharge should be revoked because she failed to abide by the Turnover Order and failed to cooperate with him and turn over property of the estate. The Debtor answered by asserting that she had paid the amounts due to the Trustee in full and, in fact, was due a refund of her overpayment. She denied that her conduct was of the type that would support revocation of her discharge.

At the trial, the Trustee presented no witnesses or evidence. Instead, he simply stated, "Your honor, we—we believe that with the pretrial and the answer

all of the allegations of the complaint—the adversary—are admitted and we would not present any witnesses." The Debtor's attorney did not make a motion for judgment at the close of the Trustee's case. Rather, he chose to present the Debtor's testimony to rebut what he must have presumed was a *prima facie* case presented by the Trustee.

The Debtor testified about her numerous health problems claiming that over the prior three years she had been treated for depression, anxiety, back pain, and chest pain. She testified that some of her health problems were caused by a stressful work environment and that she was currently on a disability leave from her employment. In support of her claim of significant health issues, the Debtor introduced into evidence medical bills from SIU Healthcare, Memorial Medical Center, and St. John's Hospital. She also introduced a printout from the County Market Pharmacy listing the prescriptions she had filled during the period of January through early October 2015.

The Debtor also testified that during the last year she provided financial assistance to her mother, who is seriously ill, and to her own daughter and grandchild. Neither the amounts nor the dates of the Debtor's payments to or on behalf of her family members were presented. The Debtor acknowledged that during the same time period she paid over $2000 to an attorney representing her in a legal action against her employer. She also claimed that her financial problems were aggravated when her tenant failed to pay rent in March and April and for part of May 2015.

With respect to her obligation to the Trustee, the Debtor stated that she did

not intentionally or willfully fail to pay the Trustee. She described the agreement her attorney negotiated with the Trustee for the $250 per month installment payments and she said that she believed that she had asked for and received another extension in her payments to the Trustee during April or May 2015. The Debtor stated that after being served with the complaint, she promptly paid the balance due from funds she had on hand. Under cross-examination, she admitted that she had not gone on disability leave until September 2015 and had been earning her full, regular salary up until that time.

Both the Trustee and the Debtor's attorney presented brief arguments at the close of trial. In his arguments, the Debtor's attorney conceded that notwithstanding the Debtor's testimony, no additional request for extension of time to make payments had been made to the Trustee in April or May. The matter is now ready for decision.

## II. Jurisdiction

This Court has jurisdiction over the issues here pursuant to 28 U.S.C. §1334. Revocation of a discharge, like an objection to discharge, is a core proceeding. 28 U.S.C. §157(b)(2)(J). Disputes regarding a debtor's right to a discharge stem from the bankruptcy itself and arise specifically under the provisions of the Code and therefore may be constitutionally decided by a bankruptcy judge. *See Stern v. Marshall*, 131 S. Ct. 2594, 2618 (2011).

## III. Legal Analysis

A debtor's discharge may be revoked under the limited circumstances

provided by the Code. Section 727(d) provides, in part:

> (d) On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if—
>
> > (1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge;
> >
> > (2) the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee;
> >
> > (3) the debtor committed an act specified in subsection (a)(6) of this section[.]

11 U.S.C. §727(d)(1)-(3).

Because the revocation of a discharge is a harsh remedy, the provisions of §727 are strictly construed against a plaintiff and in favor of a debtor. *Grochocinski v. Eckert* (*In* re *Eckert*), 375 B.R. 474, 478 (Bankr. N.D. Ill. 2007), aff'd sub nom *Eckert v. Grochocinski*, 2008 WL 4547224 (N.D. Ill. Apr. 2, 2008). A plaintiff has the burden of proof in an action to revoke a discharge. *Matter of Yonikus*, 974 F.2d 901, 904 (7th Cir. 1992); *Eckert*, 375 B.R. at 478. To meet that burden of proof, a plaintiff must establish every element of the cause of action by a preponderance of the evidence. *Eckert*, 375 B.R. at 479; *Rezin v. Barr* (*In re Barr*), 207 B.R. 160, 165 (Bankr. N.D. Ill. 1997).

The Trustee's complaint was bare bones. He alleged that the Debtor received a discharge on May 19, 2014, and that the Turnover Order was entered on

September 11, 2014. He asserted that pursuant to §521(a)(3), the Debtor had a duty to cooperate with him. He also said that pursuant to §727(d)(2), a discharge may be revoked for failing to surrender estate property or for failure to abide by a court order. He concluded that the Debtor's discharge should be revoked because she "failed to abide by this Court's order entered September 11, 2014, and turn over her 2013 Federal and State income tax refunds and further has failed to cooperate with the Trustee and turn over the property belonging to the Bankruptcy Estate."

In her answer, the Debtor denied the allegations that she had failed to abide by a court order and that she had failed to turn over estate property. She listed all of the installment payments she made to the Trustee and affirmatively asserted that her obligation to the Trustee had been paid in full.

The Trustee is correct that §727(d)(2) generally provides for revocation of a discharge when a debtor has acquired property of the estate but has failed to surrender that property to a trustee. 11 U.S.C. §727(d)(2). The Trustee, however, overlooks the statutory requirement that the failure to surrender the property must have been done "knowingly and fraudulently." *Id.* In order to prevail on his revocation of discharge action under §727(d)(2), the Trustee had to present evidence sufficient to support a finding that the Debtor "knowingly intended to defraud the trustee, or engaged in such reckless behavior as to justify the finding of fraud." *Yonikus*, 974 F.2d at 905 (citations omitted).

Here, the Trustee did not allege in his complaint that any conduct of the Debtor was "knowingly and fraudulently" intended. And with no such allegations

contained in the complaint, the Debtor obviously did not admit any such conduct in her answer. At trial, the Trustee referred to the parties' joint pretrial statement filed earlier in the case, but the Court finds nothing in that document that would constitute an admission by the Debtor of the conduct required to support a revocation of discharge under §727(d)(2). The Debtor did not admit in her testimony that she "knowingly or fraudulently" withheld property of the estate from the Trustee. In fact, the Trustee did not even ask her any questions that might have lead to such an admission. Having presented not a scintilla of evidence on a required element of a §727(d)(2) cause of action, the Trustee has failed to meet his burden of proof under that subsection.

Although the Trustee does not specifically refer to §727(d)(3) in his complaint, his allegations about the Debtor's failure to abide by the Turnover Order appear to rely on that subsection for the relief requested. A discharge may be revoked under §727(d)(3) if a debtor commits "an act specified in subsection (a)(6)" of §727. 11 U.S.C. §727(d)(3). Section 727(a)(6) provides several grounds for denial of a discharge including where a debtor has refused to obey "any lawful order of the court[.]" 11 U.S.C. §727(a)(6). By incorporating the provisions of §727(a)(6) into the grounds for revocation of a discharge, creditors and the bankruptcy estate are assured that debtors will have the incentive to obey court orders even after receiving a discharge. *See Eckert*, 375 B.R. at 480.

Here, the Debtor does not dispute that the Turnover Order was a lawful order and she admits that she did not comply with the original terms regarding the timing of her payment to the Trustee. All that is in dispute then is whether she

"refused" to comply with the Turnover Order. The clear majority of courts that have considered the issue have found that prosecuting a §727(a)(6) action requires some proof of an affirmative or willful refusal to obey an order rather than a simple failure to obey. *See Smith v. Jordan* (*In re Jordan*), 521 F.3d 430, 434 (4th Cir. 2008) (collecting cases); *Wan Ho Indus. Co. v. Hemken* (*In re Hemken*), 513 B.R. 344, 364 (E.D. Wisc. 2014); *Eckert*, 375 B.R. at 480. This Court has previously followed the majority view and required proof of willfullness in a §727(a)(6) action. *See Gargula v. Nave* (*In re Nave*), 2015 WL 3961768, at *6 (Bankr. C.D. Ill. June 29, 2015). In order to prevail, the Trustee was required to show more than just a failure to perform due to inadvertence, mistake, or inability to comply. *Eckert*, 375 B.R. at 480. Evidence of some degree of willfulness had to be presented. *Id.*; *Jordan*, 521 F.3d at 433.

The Trustee alleged in his complaint only that the Debtor "failed to abide" by the Turnover Order. In her answer, the Debtor denied that allegation and asserted additional facts claiming that she had made all required payments and, in fact, had overpaid. In the joint pretrial statement, the Trustee conceded that he had consented to receive installment payments rather than the lump sum required by the Turnover Order. In her portion of the joint pretrial statement, the Debtor again asserted that she had paid the Trustee in full.

The Trustee's statement at trial that his case was proven by the Debtor's answer and her admissions in the pretrial statement was simply inaccurate. Those documents combined do not establish a *prima facie* case that the Debtor "refused" to obey a lawful court order. No refusal to comply with the Turnover Order by the

Debtor was ever alleged or admitted. To the contrary, the documents relied on by the Trustee clearly establish that the Trustee relieved the Debtor from her duty to strictly comply with the Turnover Order and that he did not memorialize the new payment agreement in an amended order. Had the Debtor moved for judgment at the close of the Trustee's case, the Debtor would have prevailed.

The Debtor's attorney apparently did not think through the impact of the lack of a court order on the installment agreement and called the Debtor to testify in her own defense. The Debtor's unrebutted testimony was that shortly after the Turnover Order was entered, she requested and obtained an agreement from the Trustee that she could make installment payments rather than pay the lump sum required by the Turnover Order. Combined with the Trustee's admissions in the joint pretrial statement, it is clear that the Debtor's failure to strictly comply with the thirty-day payment deadline in the Turnover Order was by agreement and not the result of the Debtor's refusal to comply. Further, because the Trustee failed to memorialize the new payment agreement in an amended order, the Debtor's failure to strictly comply with the installment agreement cannot be found to be a refusal to comply with a lawful court order.

The Debtor also presented testimony regarding her non-compliance with the installment agreement. Interestingly, had there been a court order requiring the installment payments, the evidence presented by the Debtor would have undercut her position that her non-compliance with the installment agreement was not willful. She submitted several medical bills but those bills show on their face an expectation of payment by insurance or workers' compensation proceeds and

reflect only modest co-payments by the Debtor. Likewise, the Debtor presented a long list of pharmacy purchases during 2015 but the pharmacy printout also shows insurance coverage for many of the purchases and, again, modest co-payments by the Debtor. The Debtor admitted to paying an attorney $2000 when she was not paying the Trustee. She paid expenses for non-dependent family members instead of paying the Trustee. Perhaps most damaging, she admitted that when the Trustee filed his complaint, she had sufficient money in the bank so she just wrote the Trustee a check. Her own testimony indicates that her failure to comply with the installment agreement was not based on inadvertence, mistake, or inability to pay. Rather, her failure to pay was willful because she affirmatively chose to make other expenditures when she could have paid the Trustee. But the installment agreement was not part of any court order and, therefore, the Debtor's failure to comply with the agreement is not a basis to revoke her discharge.

The Trustee failed to meet his burden of proof in this case. It must also be noted, however, that he made no effort to meet his burden. At trial, he presented no witnesses or other evidence and appeared not to have given any thought to the elements of required proof. He cited no cases in support of his position in closing arguments. The Trustee obviously filed the case in haste and without thinking through the consequences of his actions.

Discharges are never to be "bought or sold" and the filing of an action to deny or revoke a discharge should never be "used as a bargaining chip" to get a debtor to pay money or provide other consideration for a discharge. *Philadelphia Indemnity Ins. Co. v. Rotert* (*In re Rotert*), 530 B.R. 791, 799 (Bankr. N.D. Okla.

2015). When an action is brought to deny or revoke a discharge, it should only be brought because the plaintiff—either a trustee or creditor—believes that the debtor is not entitled to a discharge and that evidence is available to sustain that position. Such actions are brought in a fiduciary capacity and should never be brought solely to leverage a payment from a debtor or with the expectation that the action will be settled by a dismissal in exchange for payment. A bankruptcy discharge is not a commodity that is up for sale to a debtor. *See Peterson-Marone Constr., LLC, v. McKissack (In re McKissack)*, 320 B.R. 703, 722 (Bankr. D. Colo. 2005). A debtor's conduct either justifies the issuance of a discharge or it does not. Once a trustee determines that the conduct of a debtor does not entitle that debtor to a discharge, the trustee should proceed with the action to deny the discharge as part of the trustee's statutory duties. 11 U.S.C. §704(a)(6).

Here, the Trustee was rightfully frustrated by the Debtor's failure to pay what she owed. But he filed the case without thinking through the elements of proof required for a revocation and without recognizing how his own release of the Debtor from strict compliance with the Turnover Order would impact the outcome of the case. At the pretrial conference, the Trustee stated that because he had been paid, he would not mind if the Court just dismissed the case. Perhaps cognizant of his own fiduciary duties and the limitations on dismissal of such actions, he invited the Court to just throw out his case without him having to take the affirmative action of requesting a dismissal. But dismissals of actions to deny a discharge are not granted on oral motions or oral concessions. *See* Fed. R. Bankr. P. 7041. When the Court suggested that a motion and brief in

support would be required for the Court to consider a dismissal under the circumstances presented, the Trustee requested that the matter be set for trial. And as set forth above, he then offered no evidence at trial.

The Trustee is admonished that actions to deny or revoke a discharge are reserved for cases where a debtor's conduct rises—or perhaps more accurately, falls—to a level where the debtor is not entitled to a discharge. Such actions should never be filed to leverage payment with the intention that the action will be dismissed when payment is made. This case should not have been filed. Judgment for the Debtor is required.

## IV. Conclusion

The Trustee failed to meet his burden of proof that the Debtor's discharge should be revoked. Judgment will be entered in favor of the Debtor and against the Trustee on the complaint.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###